O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RESERVE MEDIA, INC., | ) | Case No. CV 15-05072 DDP (AGRx) |
| Plaintiff, | ) ) | **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | ) ) ) | |
| EFFICIENT FRONTIERS, INC., | ) | [Dkt. 106] |
| Defendants. | ) ) | |

Presently before the court is Plaintiff and Counter-Defendant Reserve Media, Inc.'s ("Reserve") Motion for Partial Summary Judgment. After considering the parties' submissions and hearing oral argument, the court adopts the following Order.

**I. BACKGROUND**

Efficient Frontiers, Inc. ("EFI") has offered software products to companies in the hospitality industry since 1996. (First Amended Counterclaim ("FAC") ¶¶ 4, 15-17; Declaration of Lynn Carter ¶ 2.) EFI's products assist with catering and event-management, restaurant table management, and dining reservations. (FAC ¶¶ 17-19.) EFI delivers its services through a cloud-based software called "Reserve Cloud" and its web-

1  based counterpart, "Reserve Anywhere." (FAC ¶ 18.) EFI also offers an iPad-based table
2  management application, "Table iQ," which helps restaurants maximize seating capacity.
3  (*Id.*)
4       In 1998, shortly after EFI launched, it provided its software under the name
5  "Re*Serve*." (Ex B. ("Carter Depo."), attached to Declaration of Dylan Ruga at 54:10-12; Ex.
6  C ("Ex. 74 to Carter Depo."), attached to Ruga Decl.) However, in response to a cease-
7  and-desist letter from another company, EFI changed the name of the product to
8  "ReServe Interactive." (Carter Depo. at 72:21-73:16.) EFI owns a number of trademarks
9  that include the word "Reserve" but only the "Reserve Interactive" mark, which was
10 obtained in September 2007, is at issue in the present motion. (Carter Decl. ¶ 5.) The mark
11 is depicted below:

     *EFI's "Reserve Interactive" Mark. (Id. ¶ 5.)*

15      Reserve Media, Inc. ("Reserve"), a startup company focusing on restaurant
16 technology, was founded around May 2014. (Declaration of Greg Hong ¶ 3.) According
17 to the founders, the company aims to compete with consumer-facing software companies
18 that facilitate restaurant reservations. (*Id.*) The company was originally called
19 "OwnersTable," but the founders became interested in the name "Reserve" both for
20 commercial reasons and because the website domain "reserve.com" was available for
21 purchase. (*Id.*) After changing their name to Reserve Media, Inc., the company began
22 offering products and services using the mark "Reserve," as depicted below:



26 (*Id.* ¶ 8.) Reserve offers two primary products to restaurant clients: a mobile app that
27 works with other table management software to enable restaurants to receive mobile
28 payments for meals and a software program called "Reserve for Restaurants" (RFR) that

allows restaurants to manage guest books, reservations, and floor space during dining service. (*Id*. ¶¶ 5-7.) Reserve also offers a consumer-facing software program that allows diners to make restaurant reservations through either a mobile app, on the reserve.com website, or on the websites of partner restaurants. (*Id*. ¶ 6.)

On October 21, 2014, EFI first became aware of Reserve's business after an article on the startup was published online. (Carter Depo. at 295:10-297:2; Exs. D, E, attached to Ruga Decl.) Approximately one week later, EFI sent Reserve a cease-and-desist letter for attempting to use a mark that infringes on EFI's mark "Reserve Interactive and its variations." (Ex. 4, attached to Declaration Chaka C. Okadigbo.) The parties attempted to negotiate their trademark dispute but Reserve ultimately filed for declaratory relief that its use of the "Reserve" mark does not infringe on EFI's trademark rights. (Complaint ¶ 14.) EFI responded with a counterclaim asserting federal and state causes of action for trademark infringement and unfair competition. (FAC ¶¶ 34-60.) During the pendency of this litigation, Reserve has continued to use the "Reserve" marks in connection with its products and services. (Hong Decl. ¶ 5.)

Reserve now moves for partial summary judgment on three issues: 1) whether EFI's "Reserve Interactive" mark is protectable as a matter of law; 2) whether there is evidence of any willful infringement; and 3) whether there are monetary damages available. (Reserve Mot. Partial Summ. J. ("Mot.") 2-3.)

**II. LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.

1  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). If the moving party does not
2  bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate
3  that "there is an absence of evidence to support the nonmoving party's case." *Celotex*,
4  477 U.S. at 323.

5  Once the moving party meets its burden, the burden shifts to the nonmoving party
6  opposing the motion, who must "set forth specific facts showing that there is a genuine
7  issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party
8  "fails to make a showing sufficient to establish the existence of an element essential to
9  that party's case, and on which that party will bear the burden of proof at trial." Celotex,
10 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury
11 could return a verdict for the nonmoving party," and material facts are those "that might
12 affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There
13 is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational
14 trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio*
15 *Corp.*, 475 U.S. 574, 587 (1986).

16 It is not the court's task "to scour the record in search of a genuine issue of triable
17 fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay
18 out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.
19 2001). The court "need not examine the entire file for evidence establishing a genuine
20 issue of fact, where the evidence is not set forth in the opposition papers with adequate
21 references so that it could conveniently be found." *Id*.

22 **III. DISCUSSION**

23 **A.   Validity of Reserve Interactive Mark**

24 "To prevail on [a] trademark infringement claim," a party must show that "(1) it
25 has a valid, protectable trademark, and (2) that [the other party's] use of the mark is
26 likely to cause confusion." *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th
27 Cir. 2007). Whether a mark is protectable depends upon whether the mark is distinctive.
28 *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). Suggestive,

4

1 arbitrary, or fanciful marks are considered "inherently distinctive" and are automatically
2 entitled to federal trademark protection. *Id*.; *see also Two Pesos, Inc. v. Taco Cabana, Inc*., 505
3 U.S. 763, 769 (1992). On the other hand, merely descriptive marks are not automatically
4 deemed distinctive, but may become protectable if the mark acquires secondary
5 meaning. *Zobmondo*, 602 F.3d at 1113; *Two Pesos*, 505 U.S. at 769.

6 In the present motion, Reserve contends that EFI's "Reserve Interactive" mark is
7 not protectable as a matter of law because it is descriptive and has not acquired
8 secondary meaning. EFI responds that its mark is suggestive or, at least has acquired
9 secondary meaning, and thus is entitled to trademark protection. At the outset, EFI also
10 notes that it has registered the "Reserve Interactive" mark and continuously used the
11 mark in commerce for at least five years. In EFI's view, these two facts qualify the
12 "Reserve Interactive" mark as an "incontestable mark" under 15 U.S.C. § 1115(b), which,
13 among other things, prevents parties from asserting "that [the] mark is invalid because it
14 is descriptive and lacks secondary meaning." *KP Permanent Make-Up, Inc. v. Lasting*
15 *Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005). Registered marks, however, do not
16 automatically become incontestable after five years. Rather, a number of other conditions
17 must be satisfied, including the filing of an affidavit verifying certain information about
18 the mark. *See* 15 U.S.C. § 1065(4). Here, EFI does not claim that it has filed the necessary
19 affidavit nor has it submitted any evidence to that effect. Accordingly, EFI cannot avail
20 itself of the privileges afforded an incontestable mark.

21 Even if EFI's mark is not incontestable, "federal registration provides 'prima facie
22 evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that
23 the mark is a protectable mark." *Zobmondo*, 602 F.3d at 1113. This does not mean that the
24 validity of EFI's mark is immune to challenge but instead it shifts the burden to Reserve
25 "to show by a preponderance of the evidence that the mark is not protectable." *Id*. at
26 1114; *see also id*. at 1115 ("Federal registration in itself does not mean that [a party] can
27 necessarily survive summary judgment solely on the basis of its registration."). Bearing
28

1  this consideration in mind, the court evaluates Reserve's challenge to the validity of EFI's
2  "Reserve Interactive" mark.

### 1. Descriptive or Suggestive Mark

"Deciding whether a mark is distinctive or merely descriptive is far from an exact science and is a tricky business at best." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009). As a general matter, suggestive marks require "a consumer [to] use imagination or any type of multistage reasoning to understand the mark's significance." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n. 8 (9th Cir. 1998). By contrast, descriptive marks "define qualities or characteristics of a product in a straightforward way." *Id*. "Whether a mark suggests or describes the goods or services of the trademark holder depends, of course, upon what those goods or services are. We therefore adjudge a mark's strength by reference to the goods or services that it identifies . . . ." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002) (internal quotations and citations omitted).

The Ninth Circuit has typically applied one of two tests to differentiate between suggestive and descriptive marks. *Zobmondo*, 602 F.3d at 1115. The first, and more common, test is the "imagination" test, which asks whether "imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced." *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (quotation marks omitted). One routinely used example of a mark that fails the imagination test is "ENTREPENEUR," which as applied to a magazine was descriptive because "an entirely unimaginative, literal-minded person would understand the significance of the reference." *Entrepreneur Media*, 279 F.3d at 1142. The second test is known as the "competitors' needs" test and it "focuses on the extent to which a mark is actually needed by competitors to identify their goods or services." *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987). The less a competitor needs to use a particular word to market their goods or services, the more likely it is that the mark is suggestive rather than descriptive. Id. These two tests are complementary rather than independent

6

1 inquiries as "the more imagination that is required to associate a mark with a product or
2 service, the less likely the words used will be needed by competitors to describe their
3 products or services." *Zobmondo*, 602 F.3d at 1117 (quotations and citations omitted).

4 Reserve contends that the "Reserve Interactive" mark falls into the category of
5 descriptive marks. (Opp'n 8.) Here, EFI's products at issue facilitate reservations for
6 catering and event-management, enable restaurants to accept reservations, and assist
7 restaurants in managing reservations when diners come in by optimizing table usage. In
8 Reserve's view, the terms "reserve" and "interactive" serve only to describe
9 characteristics of these products, which are designed to manage various types of
10 reservations through an interactive computer program and interface. In support, Reserve
11 submits the testimony of EFI's co-founder Lynn Carter acknowledging that the name was
12 selected to "immediately express that this product facilitates reservations." (Carter Depo.
13 at 54:15-17, 54:24-55:19.) Reserve also notes that the USPTO initially rejected EFI's
14 trademark application because the mark was descriptive and informed EFI the
15 registration would only be granted if the mark acquired distinctiveness. (Ex. H, attached
16 to Ruga Decl., at 3.).[1] Finally, Reserve explains that it would be challenging for
17 competitors in the table management and dining reservation industry to market their
18 products without relying on the term "reserve."

19 EFI responds that none of this evidence is dispositive. Specifically, EFI takes issue
20 with Reserve's reliance on Carter's deposition testimony because Carter, as a lay person,
21 was not qualified to offer a legal opinion that the "Reserve Interactive" mark is
22 descriptive. EFI also notes that its decision to not contest the USPTO's conclusion the
23 mark was descriptive, and instead to submit evidence of continuous use, was a strategic
24 choice that should not be construed as a concession that the mark is in fact descriptive.
25 To the contrary, EFI indicates that Reserve's own position before the USPTO was that its

---

[1] EFI responded to the USPTO determination by claiming the mark had become distinctive through "substantially exclusive and continuous use in commerce . . . for at least [] five years . . . " and the office granted the registration. (*See* Ex. I, attached to Ruga Decl. at 2.)

7

"Reserve" mark was suggestive. EFI also applies the imagination test to explain that connecting the term "Reserve Interactive" to the products at issue requires some degree of imagination. Specifically, EFI explains that a restaurant client will need to exercise some imagination to understand the connection between the phrase "reserve interactive" and a product that does not directly facilitate making reservations. (Opp'n 12.) Likewise, a catering client will have to exercise some imagination to link the mark to a product that automates parts of the event management process. (*Id.*)

On this record, the court concludes that the "Reserve Interactive" mark is descriptive. Contrary to EFI's assertions, almost no "imagination" or "multi-stage reasoning" is required to connect the mark at issue with the products offered by EFI. *See Kendall-Jackson Winery*, 150 F.3d 1042 at 1047 n.8. Rather, the mark "define[s] qualities or characteristics of [the] product in a straightforward way." *Id*. As the Ninth Circuit has explained, "Context is critical to a distinctiveness analysis." *Lahoti*, 586 F.3d at 1201; *see also* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition ("2 McCarthy on Trademarks") § 11:69 (4th ed. 1996.) ("[I]f others are in fact using the term to describe their products, an inference of descriptiveness can be drawn."). The dictionary defines "reserve" as "[t]o set (a thing) apart for some purpose," 13 *Oxford English Dictionary* (*OED*) (2d ed. 1989) 701, and "interactive" as "[p]ertaining to or being a computer or other electronic device that allows a two-way flow of information," 7 *OED* 1086. In the domain of reservation management systems, "Reserve Interactive" does little more than describe characteristics of the products at issue—computer programs that allow a two-way flow of information to set apart something for future use. Indeed, although Carter is not qualified to offer a legal opinion on whether EFI's mark is descriptive, her testimony only serves to reinforce the conclusion that the mark in question describes the qualities of the products sold. Admittedly, Reserve's specific software programs primarily enable communication regarding reservations between diner and restaurant while EFI's products enable communication regarding reservations between commercial clients and other commercial vendors, but the fact that the phrase in

8

1 question can describe more than one type of product does not move it from the realm of
2 the descriptive to the suggestive.
3       The "competitors' needs" test confirms the court's conclusion that the "Reserve
4 Interactive" mark is descriptive. The court is not aware of, nor has EFI suggested,
5 synonyms to the term reserve that competitors in the reservation-management industry
6 could use to describe their products. Perhaps the closest synonym is "booking," but,
7 given only these limited options, it is unsurprising that the "reserve" mark is
8 commonplace in the marketplace. Reserve directs the court's attention to at least a few
9 such marks: "WebReserve," "DINERESERVE", "RESERVEDIRECT," "reserving.com,"
10 and "ReServer." (Reply 6; Plaintiff's Request for Judicial Notice.)[2] As the Ninth Circuit
11 has recognized, the fact "that the marketplace is replete with products using a particular
12 trademarked word indicates not only the difficulty in avoiding its use but also, and
13 directly, the likelihood that consumers will not be confused by its use." *Entrepeneur*
14 *Media*, 279 F.3d at 1144.

### 2. Secondary Meaning

16       "Although descriptive terms generally do not enjoy trademark protection, a
17 descriptive term can be protected provided that it has acquired 'secondary meaning.'"
18 *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir.
19 1999). To establish secondary meaning, a trademark claimant "must show that the
20 primary significance of the term in the minds of the consuming public is not the product
21 but the producer." *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118 (1938). "The test of
22 secondary meaning is the effectiveness of the effort to create it, and the chief inquiry is
23 directed towards the consumer's attitude about the mark in question: does it denote to

---

[2] The court takes judicial notice of these public trademark registrations as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2). Although Reserve only submitted these particular registrations along with its Reply brief, it first raised the argument that competitors needed to use the term "reserve" to market their products in the Motion for Partial Summary Judgment. (*See* Mot. 9-10.) Accordingly, these qualify as valid "rebuttal evidence" under Local Rule 7-10. *See* C.D. Cal. L.R. 7-10.

him 'a single thing coming from a single source?'" *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). "In determining whether a mark has obtained secondary meaning, courts consider: (1) whether actual purchasers of the product bearing the mark associate the mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and manner of use of the mark; and (4) whether use of the mark has been exclusive." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 991 (9th Cir. 2006). To survive summary judgment, it is the trademark claimant who must present sufficient evidence of secondary meaning to create a genuine dispute of fact. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002)

In support of its claim that "Reserve Interactive" has acquired secondary meaning, EFI provides deposition testimony describing in general terms the company's efforts to advertise the mark through print and digital media and by attending trade shows. (Ex. 8, attached to Okadigbo Decl. (Carter Depo.) at 44:18-45:12, 49:16-50.) EFI also submits the company's annual marketing plans and three references to "ReServe Interactive" products in trade publications. (Carter Decl. ¶¶ 13, 15; Id. Exs. EE, FF, and GG.) EFI further notes its efforts to improve its web visibility through search engine optimization and provides samples of advertisements it has published in the past. (Opp'n 15.) Reserve challenges the weight of this evidence by noting that EFI has not provided any direct evidence regarding the efficacy of their advertisement. (Reply 6.) Reserve, relying on the Ninth Circuit's statement that "[a]n expert survey of purchasers can provide the most persuasive evidence of secondary meaning," *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989), further contends that the absence of any consumer survey evidence in this case counsels against a finding of secondary meaning.

"The true test of secondary meaning is the effectiveness of the advertising effort." *Art Attacks Inc., LLC v. MGA Ent'mt Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009). As numerous cases have explained, "even extensive advertising alone does not create secondary meaning." *Quoc Viet Foods, Inc. v. VV Foods, LLC*, No. CV 12-2165 CJC (DFMx), 2016 WL 3536708, at *8 (C.D. Cal. June 14, 2016) (citing *First Brands Corp. v. Fred Meyer, Inc.*, 809

10

F.2d 1378, 1383 (9th Cir.1987)); *see also* 2 McCarthy on Trademarks § 15:5. Here, EFI has submitted some evidence of its advertising efforts over the years and a limited number of references to its products in trade publications. Although EFI does not rely on this fact, perhaps the strongest factor in favor of EFI is that it has used the mark in question since 1998 and registered it in 2007. Despite this, EFI has not provided adequate evidence to create a triable issue of fact as to secondary meaning. EFI has not specified, for instance, what share of its advertising effort was aimed at promoting "Reserve Interactive" and what share generally promoted the suite of EFI products. Nor has EFI provided any evidence to substantiate its claim that consumers recognize the mark as originating from a single source. True, EFI has expended resources on promoting its mark. But where a company selects a relatively weak mark to identify its products, it faces a commensurately greater burden in proving that its advertising was effective at "creat[ing] an association in the consumer's mind." *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1128 (9th Cir. 2006); *see also Instant Media, Inc. v. Microsoft Corp.*, 2007 WL 2318948, at *12 (N.D. Cal., Aug. 13, 2007) (Where a plaintiff's mark resides in a crowded field, hemmed in on all sides by similar marks on similar goods, that mark is weak as a matter of law.") Here, in a field where several companies are engaged in promoting various management services relying on the term "reserve," EFI has not met its burden of demonstrating that it's claimed mark is protectable as a matter of law.

**B. Remaining Issues**

Having concluded that EFI's "Reserve Interactive" mark is not protectable as a matter of law, it follows as a matter of law that Reserve could not have willfully infringed on that mark. For one party to infringe on another party's trademark presumes that the other party has a valid and protectable mark. Accordingly, the court finds that Reserve did not infringe, willfully or otherwise, on EFI's "Reserve Interactive" mark. Likewise, there is no need to address the parties competing damage calculations in light of the fact that Reserve has not infringed on the "Reserve Interactive" mark.

11

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion for Partial Summary Judgment in part. Specifically, the court concludes that EFI "Reserve Interactive" mark is a descriptive mark that lacks secondary meaning. Accordingly, the mark is not protectable as a matter of law. Therefore, the court concludes the Reserve did not infringe on EFI's "Reserve Interactive" mark.

**IT IS SO ORDERED.**

Dated: October 21, 2016

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE