**O**

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESERVE MEDIA, INC., | Case No. CV 15-05072 DDP (AGRx) |
| Plaintiff, | **ORDER RE: PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| EFFICIENT FRONTIERS, INC., et al., | [Dkt. 252] |
| Defendants. | |

Presently before the court is Plaintiff and Counter-Defendant Reserve Media, Inc.'s ("Reserve") Second Motion for Partial Summary Judgment. After considering the parties' submissions and hearing oral argument, the court adopts the following Order.

**I. BACKGROUND**

The court assumes the parties' familiarity with the facts, which have been set forth more fully in the Amended Order granting in part Reserve's First Motion for Summary Judgment. (Dkt. 235.) In brief, Efficient Frontiers, Inc. ("EFI") is a company that offers software products to companies in the hospitality industry. (First Amended Counterclaim ("FAC") ¶¶ 4, 15-17; Declaration of Lynn Carter ¶ 2.) EFI's products assist

with catering and event-management, restaurant table management, and dining reservations. (FAC ¶¶ 17-19.) Among EFI's software offerings are:

- "ReServe It," a dining-reservation web interface launched in 2005, that allows customers to book dining reservations on a restaurant's website;

- "ReServe It 2.0," an updated version of the reservation software that launched in 2010;

- "ReServe Cloud," a cloud-based software that integrates various event managing and catering programs;

- "ReServe Gateway," a web platform for enabling customers to link their operational data with third-party software applications;

- "ReServe University," an educational resource for customers that provides training and support for EFI's various program; and

- "ReServe Anywhere," a web-based version of EFI's reservation software.

(FAC ¶ 18.)

Reserve Media, Inc. ("Reserve") is a startup company focusing on restaurant technology, which was founded in 2014. (Declaration of Greg Hong ¶ 3.) According to the founders, the company aims to compete with consumer-facing software companies that facilitate restaurant reservations. (*Id*.) After settling on the name Reserve, the company began offering products and services using the mark "Reserve," as depicted below:

**RESERVE**        RESERVE **FOR RESTAURANTS**        

(*Id*. ¶ 8.) Reserve offers two primary products to restaurant clients: a mobile app that works with other table management software to enable restaurants to receive mobile payments for meals and a software program called "Reserve for Restaurants" (RFR) that allows restaurants to manage guest books, reservations, and floor space during dining service. (*Id*. ¶¶ 5-7.) Reserve also offers a consumer-facing software program that allows

2

diners to make restaurant reservations through either a mobile app, on the reserve.com website, or on the websites of partner restaurants. (*Id*. ¶ 6.)

On October 21, 2014, EFI first became aware of Reserve's business after an article on the startup was published online. (Carter Depo. at 295:10-297:2; Exs. D, E, attached to Ruga Decl.) Approximately one week later, EFI sent Reserve a cease-and-desist letter for attempting to use a mark that infringes on EFI's mark "Reserve Interactive and its variations." (Ex. 4, attached to Declaration Chaka C. Okadigbo.) The parties attempted to negotiate their trademark dispute but Reserve ultimately filed for declaratory relief seeking a determination that its use of the "Reserve" mark does not infringe on EFI's trademark rights. (Complaint ¶ 14.) EFI responded with a counterclaim asserting federal and state causes of action for trademark infringement and unfair competition. (FAC ¶¶ 34-60.) During the pendency of this litigation, Reserve has continued to use the "Reserve" marks in connection with its products and services. (Hong Decl. ¶ 5.)

In the operative First Amended Counterclaim, EFI asserts the infringement of the following registered, incontestable marks: RESERVE INTERACTIVE + design (Reg. No. 3,253,603) and RESERVE ANYWHERE (Reg. No. 3,298,635). (FAC ¶¶ 8-9.) EFI also asserts infringement of the following registered but not incontestable marks: RESERVE Q (Reg. No. 4,222,058), RESERVE Q (Reg. No. 4,297,221), RESERVE INTERACTIVE (Reg. No. 4,382,898), RESERVE CLOUD (Reg. No. 4,892,191). (*Id*. ¶¶ 10-12.) Finally, EFI asserts infringement of the following unregistered marks: RESERVE IT, RESERVE IT 2.0, RESERVE UNIVERSITY, RESERVE GATEWAY. (*Id*. ¶ 13.)

On September 12, 2016, Reserve moved for Partial Summary Judgment, *inter alia*, on the issue of liability as to the RESERVE INTERACTIVE word mark (Reg. No. 4,382,898). The court granted summary judgment in Reserve's favor on the RESERVE INTERACTIVE word mark, concluding that the mark was descriptive and lacked secondary meaning. (*See* Dkt. 235.) After the entry of partial summary judgment, Reserve moved for leave to file a successive summary judgment motion. (Dkt. 208.) The court

1  granted the Motion and Reserve filed the instant Second Motion for Partial Summary

2  Judgment. (Dkt. 252.)

3  **II. LEGAL STANDARD**

4      Summary judgment is appropriate where the pleadings, depositions, answers to

5  interrogatories, and admissions on file, together with the affidavits, if any, show "that

6  there is no genuine dispute as to any material fact and the movant is entitled to judgment

7  as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the

8  initial burden of informing the court of the basis for its motion and of identifying those

9  portions of the pleadings and discovery responses that demonstrate the absence of a

10  genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). All

11  reasonable inferences from the evidence must be drawn in favor of the nonmoving party.

12  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 242 (1986). If the moving party does not

13  bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate

14  that "there is an absence of evidence to support the nonmoving party's case." *Celotex,*

15  477 U.S. at 323.

16      Once the moving party meets its burden, the burden shifts to the nonmoving party

17  opposing the motion, who must "set forth specific facts showing that there is a genuine

18  issue for trial." *Anderson,* 477 U.S. at 256. Summary judgment is warranted if a party

19  "fails to make a showing sufficient to establish the existence of an element essential to

20  that party's case, and on which that party will bear the burden of proof at trial." Celotex,

21  477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury

22  could return a verdict for the nonmoving party," and material facts are those "that might

23  affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.  There

24  is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational

25  trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio*

26  *Corp.,* 475 U.S. 574, 587 (1986).

27      It is not the court's task "to scour the record in search of a genuine issue of triable

28  fact." *Keenan v. Allan,* 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay

out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id*.

## III. DISCUSSION

### A.     Trademark Infringement Liability

In the instant motion, Reserve contends that there is no triable issue of fact with respect to liability for seven of EFI's marks. (Pl.'s Second Mot. Partial Summ. J. ("Mot.") 7.) First, Reserve contends that five EFI marks—RESERVE IT, RESERVE IT 2.0, RESERVE GATEWAY, RESERVE UNIVERSITY, and RESERVE CLOUD—are unprotectable as a matter of law because they are descriptive and lack secondary meaning. Second, Reserve argues that is entitled to summary judgment on EFI's trademark infringement claims based on the RESERVE INTERACTIVE design mark and the RESERVE ANYWHERE mark because EFI disclaimed any exclusive rights in the word "reserve" during the registration process. The court considers these contentions in turn.

#### 1.   Liability as to Descriptive or Suggestive Marks

"To prevail on [a] trademark infringement claim," a party must show that "(1) it has a valid, protectable trademark, and (2) that [the other party's] use of the mark is likely to cause confusion." *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Whether a mark is protectable depends upon whether the mark is distinctive. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). Suggestive, arbitrary, or fanciful marks are considered "inherently distinctive" and are automatically entitled to federal trademark protection. *Id*.; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). On the other hand, merely descriptive marks are not automatically deemed distinctive, but may become protectable if the mark acquires secondary meaning. *Zobmondo*, 602 F.3d at 1113; *Two Pesos*, 505 U.S. at 769.

"Deciding whether a mark is distinctive or merely descriptive is far from an exact science and is a tricky business at best." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1197 (9th Cir. 2009). As a general matter, suggestive marks require "a consumer [to] use imagination or any type of multistage reasoning to understand the mark's significance." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n. 8 (9th Cir. 1998). By contrast, descriptive marks "define qualities or characteristics of a product in a straightforward way." *Id*. "Whether a mark suggests or describes the goods or services of the trademark holder depends, of course, upon what those goods or services are. We therefore adjudge a mark's strength by reference to the goods or services that it identifies . . . ." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 (9th Cir. 2002) (internal quotations and citations omitted).

The Ninth Circuit has typically applied one of two tests to differentiate between suggestive and descriptive marks. *Zobmondo*, 602 F.3d at 1115. The first, and more common, test is the "imagination" test, which asks whether "imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced." *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007) (quotation marks omitted). One routinely used example of a mark that fails the imagination test is "ENTREPENEUR," which as applied to a magazine was descriptive because "an entirely unimaginative, literal-minded person would understand the significance of the reference." *Entrepreneur Media*, 279 F.3d at 1142. The second test is known as the "competitors' needs" test and it "focuses on the extent to which a mark is actually needed by competitors to identify their goods or services." *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1218 (9th Cir. 1987). The less a competitor needs to use a particular word to market their goods or services, the more likely it is that the mark is suggestive rather than descriptive. Id. These two tests are complementary rather than independent inquiries as "the more imagination that is required to associate a mark with a product or service, the less likely the words used will be needed by competitors to describe their products or services." *Zobmondo*, 602 F.3d at 1117 (quotations and citations omitted).

Applying this standard, the court's prior Order concluded that the RESERVE INTERACTIVE word mark was descriptive because "[i]n the domain of reservation management systems, 'Reserve Interactive' does little more than describe characteristics of the products at issue—computer programs that allow a two-way flow of information to set apart something for future use." (Dkt. 235 at 8.) Reserve now contends that the same logic counsels in favor of granting Reserve summary judgment on the liability issue as to five additional EFI marks: (1) RESERVE IT, (2) RESERVE IT 2.0, (3) RESERVE GATEWAY, (4) RESERVE UNIVERSITY, and (5) RESERVE CLOUD.

a.   RESERVE IT and RESERVE IT 2.0

Beginning with RESERVE IT and RESERVE IT 2.0, Reserve contends that both marks are descriptive of a product that allows businesses to accept online dining reservations. (Mot. 10 (citing Ex. I.).) With regards to the latter mark, Reserve also notes that, aside from a single reference in a press release, this second-generation of the RESERVE IT product was still sold under the RESERVE IT name. (*See* Ex. V; Ex. B (Carter Dep.) 274:1-10.) EFI counters that the mark is not descriptive because EFI's customers might not immediately comprehend which of the various RESERVE INTERACTIVE products the RESERVE IT mark refers to, and thus would need to exercise a mental leap before understanding that the mark referred to a tool for making restaurant reservations. EFI also argues that "IT" is an ambiguous term in the mark and, even placed in the context of the hospitality industry, a consumer might think IT refers to event spaces, catering companies, or something other than online dining reservations. (Opp'n 15.) EFI does not challenge the contention that the RESERVE IT 2.0 mark is not used to market the second-generation reservation product.

As the court explained in its prior Order, "reserve" is defined as "[t]o set (a thing) apart for some purpose." With the RESERVE IT and RESERVE IT 2.0 marks, EFI has taken this verb "reserve" and appended a generic pronoun to indicate the subject or direct object of the phrase. Given the common meanings of these terms, the court cannot conclude that there is a triable issue of fact as to whether it requires any "imagination" or

"multi-stage reasoning," *see Kendall-Jackson Winery*, 150 F.3d 1042 at 1047 n.8, to connect the RESERVE IT or RESERVE IT 2.0 mark to a product that enables consumers to making dining reservations through a web interface. Perhaps even more so than the RESERVE INTERACTIVE mark, which the court has already found descriptive, the RESERVE IT and RESERVE IT 2.0 marks "define qualities or characteristics of [the] product in a straightforward way." *Id*. EFI's contention that "IT" is ambiguous and may refer to any number of products does not alter this conclusion. As the Ninth Circuit has explained, "[c]ontext is critical to a distinctiveness analysis." *Lahoti*, 586 F.3d at 1201. Although it is possible that a consumer might mistakenly understand the phrase to refer to something other than a dining reservation system, the test for descriptiveness does not ask whether a consumer "understands the word to refer to the goods themselves." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005) (stating test for determining whether a mark is generic). The fact that EFI might have chosen an even more descriptive mark or an outright generic mark—say RESERVE DINING or RESTAURANT RESERVATIONS—does not change the fact that "an entirely unimaginative, literal-minded person would understand," *Entrepreneur Media*, 279 F.3d at 1142, would understand the explanation that RESERVE IT is software that enables consumers to make dining reservations.

### b.   RESERVE GATEWAY

Turning to the RESERVE GATEWAY mark, Reserve contends that the mark is descriptive because it describes a product that allows communication between various computers for the purpose of facilitating and managing dining reservations. (Mot. 12.) First, Reserve notes that EFI employees have described the RESERVE GATEWAY product as "an API for inputting and exporting date from ReServe." (Ruga Decl., Ex B. (L. Carter Depo. 269:12-14.). As EFI's marketing director explained, "it's a way for software platforms to communicate with each other." (Ruga Decl., Ex. U (M. Remmel Depo. 131:4-6.) Reserve then provides a dictionary definition of "gateway," which describes the term as "software or hardware that connects to disparate computer

networks, as to enable the pass of information between a home or business network and the Internet." (RJN, Ex. 7.)[1] Given this definition, Reserve contends that appending the term GATEWAY to the term RESERVE provides a literal description of the product in question.

EFI does not challenge Reserve's description of how the RESERVE GATEWAY product operates. (*See* Opp'n 14.) EFI's only response is that alternative meanings of the term "gateway"—including a "software that facilitates digital communication of text messages over cellular phone networks" or an "entrance or passage that may be closed by a gate"—mean that a consumer might have to exercise some imagination to understand the precise functionality of the RESERVE GATEWAY product. (*Id.*) As with RESERVE IT, EFI's arguments on this point do not account for the fact "[c]ontext is critical to a distinctiveness analysis." *Lahoti*, 586 F.3d at 1201. It is possible that a consumer might construe the mark to mean a reservation system for "an opening that can be closed by a gate" but in the context of reservation-management software, it is readily comprehensible that the term describes a computer interface system for connecting various computers to facilitate the making of reservations. *See Zobmondo*, 602 F.3d at 1116 ("The imagination test does not ask what information about the product *could* be derived from a mark, but rather whether 'a mental leap is *required*' to understand the mark's relationship to the product.") (emphasis in original) (citations and quotation omitted). Aside from its attorneys' argument, EFI has not presented any evidence that creates a triable issue of fact as to whether RESERVE GATEWAY is a descriptive mark.

c.   RESERVE UNIVERSITY

Reserve contends that RESERVE UNIVERSITY is a descriptive mark when applied to "an online learning and support service for ReServe users that offers access to all of the training and support tools [EFI] offer[s], including a Resource Library, Online Classroom, Help Desk and Support Knowledgebase." (Ruga Decl., Ex. X.) As with the other marks,

---

[1] The court hereby grants Reserve's Request for Judicial Notice as to Exhibit 7, which is an online definition of the term "gateway" pursuant to Fed. R. Evid. 201(b)(2).

Reserve contends that no mental leap is required to connect a mark that combines the common words "reserve" and "university" with the product in question. EFI responds that the term "university" is not descriptive of an online suite of help and support tools. EFI further contends that, even placed in the context of reservation software, there is ambiguity about which of the RESERVE INTERACTIVE programs RESERVE UNIVERSITY services.

As with the prior marks, the court concludes that RESERVE UNIVERSITY is a descriptive mark. Place in the appropriate software context, Reserve has supplied evidence of numerous companies that append "UNIVERSITY" onto a product mark to identify a training module. (*See* Ruga Decl., Ex. Y (Oracle University, LexisNexis University, and Salesforce University).) Where the initial mark is at least suggestive, there is a colorable argument the composite mark might also be suggestive. Here, however, "RESERVE" is a weak mark and appending a common term for a training program fails to move the mark into the realm of the suggestive. The fact that RESERVE UNIVERSITY teaches consumers about several RESERVE INTERACTIVE products does not alter the conclusion that it is a training module for a software suite that, at least in part, facilitates reservations. The court would arrive at the same conclusion applying the consumer needs test. Given that several software companies rely on "university" to identify training modules, there is evidence of at least some need in the marketplace to use this term. Were the court to permit EFI to enforce the RESERVE UNIVERSITY mark, it might functionally prevent other producers of reservation software from identifying their training tools. Indeed, EFI confirmed at oral argument that, if RESERVE UNIVERSITY were enforceable, it would also seek to prevent others from using phrases such as RESERVE ACADEMY. This further underscores the risks of permitting a party to enforce marks that are broadly descriptive of an entire category of goods, as is the case here with training modules for reservation software.

#### d.   RESERVE CLOUD

The final mark that Reserve contends is descriptive is RESERVE CLOUD. According to EFI, RESERVE CLOUD is a "redesign of the ReServe product suite implemented in a true cloud environment. It's a cloud application." (Ruga Decl., Ex. B (Carter Depo. 98:23-99:2.) Put simply, RESERVE CLOUD is a website that enables consumers to access EFI's full suite of Reserve Interactive products through a cloud-based interface. Reserve first notes that the Supreme Court has described "cloud computing" as "the capacity of Internet-connected devices to display data stored on remote servers rather than on the device itself." *Riley v. California*, 134 S. Ct. 2473, 2491 (2014). Relying on this definition, Reserve contends that RESERVE CLOUD mark is descriptive of the product at issue which is a cloud-based version of the RESERVE INTERACTIVE software. Reserve also identifies proceedings before the Patent and Trademark Office that finds marks which used "cloud" along with another term were descriptive. *See In Re Datapipe, Inc.*, 111 U.S.P.Q. 2d 1330 (T.T.A.B. July 7, 2014) (concluding the mark "YOUR CLOUD" was descriptive as applied to an electronic data storage service and server security service); *Casecentral, Inc. v. Nextpoint, Inc.*, No. 91198858, 2013 WL 6255043, at *7 (Oct. 29, 2013) (holding that "a consumer would understand 'PRESERVATION CLOUD,' used in connection with applicant's services, as directly conveying information about them, namely, that they are intended to preserve information online (in the 'cloud')").

EFI responds by first noting that RESERVE CLOUD is a registered trademark and is thus "endowed . . . with a strong presumption of validity." *KP Permanent Make–Up, Inc.*, 408 F.3d at 604. EFI then argues that the RESERVE CLOUD mark is suggestive because a consumer would need to exercise a leap of logic to understand that the mark does not describe a cloud-based reservation system, as might be a literal interpretation, but instead identifies a suite of RESERVE INTERACTIVE products. (Opp'n 12-13.) EFI further notes that, depending on the particular combination of EFI products a consumer

purchases, their version of RESERVE CLOUD may not include any dining reservation capabilities. (*See* Carter Decl. ¶ 12.)

"Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid, but the presumption evaporates as soon as evidence of invalidity is presented." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1022 (C.D. Cal. 2011) (citing 15 U.S.C. § 1051 et seq.) Reserve has presented evidence of invalidity and its arguments must be evaluated accordingly. As with the other marks at issue in this Motion, EFI fails to address the consequences of placing the mark in the appropriate context. As the logic of the Patent and Trademark Office's decisions suggest, the addition of "cloud" to another descriptive term often "does not evoke a new and unique commercial impression. Rather, the words . . . each retain their merely descriptive significance in relation to the recited services." *In Re Datapipe, Inc.*, 111 U.S.P.Q.2d 1330, at *9. For instance, in the PRESERVATION CLOUD case, the Patent and Trademark Office was confronted with a mark that was applied to a service for a cloud-based data storage system. Although both the word "preservation" and "cloud" have a number of meanings, in the context of the service offered, the term was found to be descriptive of the product on offer. *Casecentral, Inc. v. Nextpoint, Inc.*, No. 91198858, 2013 WL 6255043, at *7 (Oct. 29, 2013). RESERVE CLOUD is in the same mold. Although some configurations of the RESERVE CLOUD program may not focus on reservations, EFI acknowledges that other configurations are precisely what the term describes: a cloud-based reservation interface. Even accepting EFI's contention that all reservation functionality could be eliminated from a particular iteration of RESERVE CLOUD, the test for descriptiveness does not require that a mark describe a product in all its variations but rather that it "define a particular characteristic of the product." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 632 (9th Cir. 2005).

A competitors' needs approach reinforces the conclusion that RESERVE CLOUD is descriptive. EFI may be correct that some versions of its software do not provide reservation functionality, but allowing EFI to enforce this marks risks excluding any

competitors who wish to create a cloud-based reservation system or promote such a software. EFI argues that the competitors' needs test counsels in its favor because the most successful player in this field, OpenTable, does not need to use any of the terms or marks disputed in this litigation but argument is unavailing. The fact that one successful company has invested resources in a non-descriptive mark does not mean that others competitors do not need to rely on certain terms to market their products. Accepting EFI's argument on this issue would be akin to concluding a shoe company was allowed to trademark the word "shoe" because Nike is successful without relying on the word.

### 2. Secondary Meaning

"Although descriptive terms generally do not enjoy trademark protection, a descriptive term can be protected provided that it has acquired 'secondary meaning.'" *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). To establish secondary meaning, a trademark claimant "must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118 (1938). "The test of secondary meaning is the effectiveness of the effort to create it, and the chief inquiry is directed towards the consumer's attitude about the mark in question: does it denote to him 'a single thing coming from a single source?'" *Carter-Wallace, Inc. v. Proctor & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970). "In determining whether a mark has obtained secondary meaning, courts consider: (1) whether actual purchasers of the product bearing the mark associate the mark with the producer; (2) the degree and manner of advertising under the mark; (3) the length and manner of use of the mark; and (4) whether use of the mark has been exclusive." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 991 (9th Cir. 2006). To survive summary judgment, it is the trademark claimant who must present sufficient evidence of secondary meaning to create a genuine dispute of fact. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002)

Having concluded that EFI's RESERVE IT, RESERVE IT 2.0, RESERVE GATEWAY, and RESERVE CLOUD marks are descriptive, the court considers whether

there remains a triable issue of fact as to secondary meaning. EFI contends that the secondary meaning of the marks is evidenced by EFI's extensive advertising efforts, including "in-print, on its website, on third-party websites, at conferences, through in-person demonstrations, at trade shows, in press releases, in paid-for advertisements, through hospitality news list serves, via social media, through search engine optimization, and through direct customer communications." (Opp'n 20 (citing Carter Decl., ¶ 65-90; Exs. 15-58).) In addition, EFI cites, the company's growth, (Carter Decl. ¶¶ 91-92,) sales figures, (Carter Decl. ¶¶ 94-107,) third-party recognition and reviews, (Carter Decl. ¶¶ 115-118,) search engine results (Okadigbo Decl., Exs. 23-28), and publication references.

As the court explained in its prior Order, "[t]he true test of secondary meaning is the effectiveness of the advertising effort." *Art Attacks Inc., LLC v. MGA Ent'mt Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009); *see also Quoc Viet Foods, Inc. v. VV Foods, LLC,* No. CV 12-2165 CJC (DFMx), 2016 WL 3536708, at *8 (C.D. Cal. June 14, 2016) (holding that "even extensive advertising alone does not create secondary meaning."). Here, EFI has submitted evidence of its advertising efforts but has not submitted any direct evidence of the efficacy of that advertising. *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) (noting that "[a]n expert survey of purchasers can provide the most persuasive evidence of secondary meaning" but also taking into account circumstantial evidence of distinctiveness). A review of this circumstantial evidence, even drawing all reasonable inferences in favor of EFI, leads the court to conclude that there is no triable issue of fact as to secondary meaning.

Aside from evidence of advertising, EFI points to statements from EFI's co-founder that the company has grown from two to twenty-five people and has large offices at California. (Carter Decl. ¶ 91-92) Without additional context or information, this level of growth means for whether the particular marks at issue have achieved secondary meaning in consumer's minds. EFI's evidence about sales growth suffers from a similar deficiency. While profit loss statements provide information about the overall growth of

14

the company, both the declarations submitted and the attached exhibits offer little indication of how the four descriptive marks at issue here relate to the company's profitability.[2] Likewise, Reserve notes that it has been recognized by industry awards for its products. Although some of these awards go to the overall prominence of the company, other awards refer to product lines that are not at issue in this motion. (*See* Carter Decl., Exs. 82-83 (addressing recognition of the Table iQ product).) Moreover, none of these awards refer specifically to the marks or products the court has found descriptive. EFI next provides customer reviews of its product to establish consumer awareness.[3] The court has determined that these reviews are not admissible for lack of authentication. However, even if the court were to consider them, ad hoc feedback from a collection of customers is not a reliable indicator of secondary meaning. *See Best Vacuum, Inc. v. Ian Design, Inc.*, 2005 WL 1185817, at *4 (N.D. Ill., Jan. 18, 2005) ("Plaintiff's reviews and surveys may constitute evidence of satisfied customers but they do not appear to constitute evidence of acquired secondary meaning."). Finally, EFI's evidence of the prominence of its products on online search engines is inadequate to create a triable issue of fact as to whether actual consumers associate the particular marks with a source indicator. *See, e.g., Shade's Landing, Inc. v. Williams*, 76 F. Supp. 2d 983, 989 (D. Minn. 1999) ("The high placement of plaintiff's web site in search engine listings . . . does not show [] that many consumers have actually found or searched for plaintiff's services using that

---

[2] Where particular product lines are broken out such as RESERVE IT, the overall sales amount is a small fraction of the company as a whole. Further, some of the product lines, such as RESERVE CLOUD were not marketed prior to Reserve's own entry into the market in May 2014.

[3] Reserve objects to the inclusion of these reviews as they were not turned over during discovery despite a request for all documents that establish secondary meaning. (Dkt. 281.) EFI responds that these documents are publicly available and thus not excluded under Fed. R. Civ. P. 26(e)(1) & 37(c). Whether or not they should have been disclosed during discovery, the court notes that there has been no authentication of the veracity of these reviews or they represent genuine customers. *See Adobe Systems Inc. v. Christenson*, 2011 WL 540278, at *9 (D. Nev., Feb. 7, 2011) (holding that printouts of a review website do not establish the authenticity of the "reviews and comments contained therein"). Thus, the objection is sustained.

phrase such that it has become associated with plaintiff's web site in the public mind.");

*DeGidio v. West Group Corp.*, 191 F. Supp. 2d 904, 916 (N.D. Ohio 2002).

Ultimately, the evidence EFI provides demonstrates that EFI has expended efforts to generally promote the range of RESERVE INTERACTIVE products. There is no evidence, however, to substantiate the claim that consumers recognize the five marks found to be descriptive here as originating from a single source. As with the RESERVE INTERACTIVE which the court found lacked secondary meaning, where a company selects a relatively weak mark to identify its products, it faces a commensurately greater burden in proving that its advertising was effective at "creat[ing] an association in the consumer's mind." *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1128 (9th Cir. 2006); *see also Instant Media, Inc. v. Microsoft Corp.*, 2007 WL 2318948, at *12 (N.D. Cal., Aug. 13, 2007) (Where a plaintiff's mark resides in a crowded field, hemmed in on all sides by similar marks on similar goods, that mark is weak as a matter of law.") Given that EFI has failed to make such a showing, the court concludes that EFI's RESERVE IT, RESERVE IT 2.0, RESERVE GATEWAY, RESERVE UNIVERSITY, and RESERVE CLOUD marks are unenforceable as a matter of law because they are descriptive and lack secondary meaning, and thus Reserve is entitled to summary judgment on EFI's trademark infringement claims based on these marks.[4]

### 3. Liability as to Incontestable Marks

Reserve's second liability argument pertains to two EFI marks that have achieved incontestable status: the RESERVE INTERACTIVE design mark and the RESERVE

---

[4] Reserve requests cancellation of the RESERVE CLOUD mark. Although formal cancellation proceedings are held before the PTO, this Court may also direct cancellation pursuant to 15 U.S.C. § 1119. *See Van Well Nursery, Inc. v. Mony Life Ins. Co.*, 421 F. Supp. 2d 1321, 1332 (E.D. Wash. 2006) No. CV-04-0245-LRS, 2006 WL 1455650 (E.D. Wash. May 18, 2006) ("'When a court determines that a mark is either a generic term or a descriptive term lacking secondary meaning, the purposes of the Lanham Act are well served by an order canceling the mark's registration.'") (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 792 (5th Cir. 1983)). Having concluded that the RESERVE CLOUD mark is descriptive and lacks secondary meaning, the court directs the PTO to cancel the mark. *See Gracie v. Gracie*, 217 F.3d 1060, 1065 (9th Cir. 2000) (holding that it was an abuse of discretion to fail to order cancellation of unprotectable mark following a jury verdict).

ANYWHERE word mark. Reserve contends that it has not infringed either of those marks because EFI disclaimed any exclusive right to use the word "RESERVE" apart from the mark. (Mot. 15). As reflected in the proceedings before the Patent Office, when EFI attempted to register the RESERVE ANYWHERE mark, it was required to "disclaim the descriptive wording 'RESERVE' apart from the mark as shown" because "the term RESERVE is descriptive in relation to the applicant's services." (*See* Ex. Z (Office Action requiring disclaimer); Ex. AA (Examiner's Amendment noting EFI's disclaimer).) Likewise, in proceedings regarding the RESERVE INTERACTIVE design mark, EFI was required to "disclaim the descriptive wording 'RESERVE INTERACTIVE' apart from the mark as shown because it merely describes the nature of the goods and services. (*See* Ex.BB (Office Action requiring disclaimer); Ex. CC (Examiner's Amendment noting EFI's disclaimer).) Reserve contends that, in light of those disclaimers, EFI cannot now bring a trademark infringement action against Reserve for using the mark "RESERVE." In support, Reserve notes two cases describing analogous situation. (Mot. 16.) The first involved a determination that the owner of the "Grand Cru Vineyards" mark could not bring a trademark infringement action against a company that used the term "grand cru" because the term was disclaimed during registration, *Grand Cru Vineyards, Inc. v. Grand Cru, Inc.*, 1990 WL 16152, at *1 (S.D.N.Y. Feb. 15, 1990), and the second involved a finding that the owner of the mark "OAG Travel Planner" had not shown a "serious question" of infringement by a company using the phrase "Travel Planner" because the phrase was expressly disclaimed, *Official Airline Guides, Inc. v. Goss* ("*OAG Travel Planner*"), 856 F.2d 85, 87 (9th Cir. 1988).

EFI responds by first noting that "disclaimed material forming part of a registered trademark cannot be ignored" when evaluating infringement actions. *Kelley Blue Book v. Car–Smarts, Inc.*, 802 F. Supp. 278, 291 (C.D. Cal. 1992). EFI then notes that this is particularly the case when considering a design mark where a combination of the disclaimed terms and appearance of the mark may create a likelihood of confusion. EFI's brief, however, does not identify any evidence that would create a triable issue of fact as

to whether that the particular design of the relevant marks here give rise to a likelihood of confusion. Indeed, in *Grand Cru* the court was considering a design mark when it found that there was no infringement claim. EFI then attempts to distinguish the *OAG Travel Planner* and *Grand Cru* cases. In both instances, EFI notes that the allege infringement involved the entire disclaimed phrase—an infringement action for using the phrase "travel planner" or "grand cru" where those exact phrases were disclaimed. By contrast, EFI contends that it disclaimed the phrase "reserve interactive" and is now bringing an infringement action against a company using only the phrase "reserve."

EFI cites no authority for why this distinction gives rise to a triable issue of fact. First, with respect to the "RESERVE ANYWHERE" mark, EFI disclaimed the term "reserve" so even under its own logic it cannot bring an infringement action against another company for using the term "reserve." As for the RESERVE INTERACTIVE mark, it is true that EFI disclaimed the phrase "reserve interactive." However, as reflected in the PTO Office Action, the rationale for requiring that disclaimer was that "[i]n relation to the goods, the wording RESERVE indicates the nature of the computer software related to reservations. The applicant's specimen of record indicates this is the subject matter for the software. . . . In relation to the goods, the term [INTERACTIVE] is descriptive because interactive software is a genre of software. . . . Thus, the wording RESERVE INTERACTIVE merely describes the nature of the software as interactive software dealing with reservations." (Ruga Decl., Ex. BB). Thus, EFI was required to disclaim the phrase "reserve interactive" because each of these terms separately and combined was descriptive of its products. EFI's position to the contrary fails to properly account for the determinations of the PTO and finds no support in case law or logic. It would be incongruous  to conclude that the holder of the "OAG Travel Planner" mark could not bring an infringement action against someone who used the mark "Travel Planner" but they could bring such an action against someone who used the mark "Travel" alone. Accordingly, the court concludes the Reserve is entitled to summary

1  judgment on EFI's infringement claims based on the RESERVE INTERACTIVE design

2  mark and RESERVE ANYWHERE word mark.

3  **B. Willful Infringement**

4  In addition to contesting the enforceability of several EFI marks, Reserve contends

5  that it is also entitled to summary judgment on the issue of whether there was willful

6  infringement of any EFI marks. "Willful trademark infringement occurs when the

7  defendant's actions are 'willfully calculated to exploit the advantage of an established

8  mark.'" *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) (citing *Lindy Pen Co., Inc. v.

9  Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)). "Willful infringement carries a

10  connotation of deliberate intent to deceive." *Lindy Pen Co.*, 982 F.2d at 1406 *superseded by*

11  *statute on other grounds*, Trademark Amendments Act of 1999, Pub. L. No. 106–43, 113

12  Stat. 218.

13  Reserve contends that there is no evidence it knew about EFI's marks, much less

14  willfully intend to capitalize on its goodwill and reputation. (Mot. 17.) To the contrary,

15  Reserve has submitted evidence indicating that the company's principals did not learn of

16  the EFI until EFI sent a cease and desist letter in October 2014. (Ruga Decl., Ex. J (Munoz

17  Depo.) 101:11-18.; Hong Decl. ¶ 4.) Reserve also notes that EFI's co-founder admitted

18  during deposition that she did not have any evidence that Reserve knew about her

19  company prior to launching. (*See* Ruga Decl., Ex. B (Carter Depo.) 328:23-329:3.)[5]

20  EFI responds that there is sufficient evidence in the record about Reserve's

21  knowledge of EFI's marks to create a triable issue of fact as to willful infringement. In

22  support, EFI provides an internal email from a Reserve employee to Reserve's CEO, Greg

23  Hong, suggesting various Twitter account names including "RESERVEInt," which was

24  EFI's account name on Twitter. (Okadigbo Decl., Ex. 17.) EFI also provides an email from

25  Hong's account that references Reserve Interactive as part of a "Google Alert" update.

26  ───────────────

27  [5] Reserve also argues that it relied on the advice of counsel in coming to its

28  conclusion that it could use the Reserve mark. Because the willful infringement claim can be resolved without addressing this issue, the court declines to address whether the defense is available in light of EFI's discovery objections.

(Okadigbo Decl. Ex. 19.) EFI further notes that a "Basic Word Mark Search" for "RESERVE" on the USPTO's electronic database would have revealed EFI's various marks. (Okadigbo Decl., Exs. 21, 22.) In addition to actual knowledge, EFI argues that, at a minimum, there is constructive knowledge given that several EFI marks were registered with the PTO. Finally, EFI contends that there is evidence of willful infringement subsequent to the October 2014 cease and desist letter, as Reserve continues to use the disputed marks. (Opp'n 23.)

The evidence submitted by EFI fails to create a triable issue of fact as to willful infringement. First, the operative question for willful infringement is not whether there was knowledge of another mark but instead whether there was "knowing use of a mark, with the belief that there is no confusion, does not constitute willful infringement." *Blau v. YMI Jeanswear, Inc.*, No. cv-02-09551 FMC (SHSx), 2004 WL 5313967, at *6 (C.D. Cal. Jan. 2, 2004), *aff'd*, 129 F. App'x 385 (9th Cir. 2005) (citing *Lindy*, 982 F.2d at 1406). Thus, even if the court were to fully credit EFI's contentions regarding knowledge, there is still insufficient evidence of willful infringement. Moreover, the circumstantial evidence EFI relies on to show knowledge is itself inadequate for a reasonable jury to conclude there was willful infringement. In particular, the email regarding Twitter account names includes no acknowledgement that "RESERVEInt" belongs to EFI. To the contrary, it appears an employee included that account names on a longer list of possible options for the new company and Reserve's CEO responded by expressing a preference for a different account name. (*See* Okadigbo Decl., Ex. 17.) Likewise, the reference in Hong's email to RESERVE INTERACTIVE comes from an automatically generated alert email by Google, in which EFI's mark is the 20th of 24 alerts. (Okadigbo Decl. Ex. 19.) Even if a jury were to disregard Hong's testimony that he never saw this message, this single email is inadequate to create a triable issue of fact as to knowledge much less willfulness. As for EFI's contention regarding constructive knowledge, Reserve correctly notes that issue goes to a determination of liability when applying the *Sleekcraft* factors rather than a determination of willful infringement for purposes of establishing damages.

Turning to EFI's contention that the failure to comply with the cease and desist letter constitutes willful infringement, the court finds that there is no triable issue of fact on this issue as well. As Reserve correctly notes, district courts in this Circuit have concluded that "the failure to stop using a mark after receiving a cease and desist letter does not show willful infringement and is not necessarily indicative of bad faith." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1096 (C.D. Cal. 2003) (internal quotations and citations omitted); *accord Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1165 (N.D. Cal. 2011). EFI attempts to distinguish these cases by noting that the courts in those cases paid special attention to the fact that the disputed marks were unregistered. (Opp'n 24.) However, a review of those cases confirms that, while the lack of federal registration may reinforce a conclusion that an alleged infringers refusal to cease and desist was done in good faith, the operative question is whether the action was "indicative of any bad faith." *Groupion,* 826 F. Supp. 2d at 1165. By contrast, the cases EFI relies on where the court found willful infringement after a failure to cease and desist involved situations where "[t]he intent of defendants to infringe was clearly demonstrated" and the court "had [not] entertained the slightest doubt regarding defendants' deliberate, willful intent to infringe." *See, e.g., O'Brien Int'l, Inc. v. Mitch*, No. C 79 0227 (SAW), 1980 WL 30251, at *9 (N.D. Cal. June 16, 1980); *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 472, 475 (N.D. Cal. 1992) (finding that there was clear intent to infringe where the defendant was warned not only by the trademark holder but also "from independent Canadian officials regarding likelihood of confusion"). Accordingly, the court GRANTS Reserve summary judgment on EFI's claims of willful infringement as to all marks.

### C. Remaining Issues

The final issue upon which RESERVE seeks summary judgment is whether EFI is entitled to damages for any of its trademark infringement claims. Given the court's prior findings regarding the unenforceability of EFI's marks, the only marks that remain at issue in this action are EFI's RESERVE Q marks (Reg. Nos. 4,222,058 and 4,297,221).

1   Rather than enter partial summary judgment on the damages question and proceed to

2   trial on the final two marks, the court concludes that the most efficient course would be

3   for the parties to address whether there are any viable trademark infringement claims

4   based on the RESERVE Q marks. If there is no triable issue of liability as to these marks,

5   it appears to the court that the remaining issues in this case can be resolved as a matter of

6   law. Accordingly, the court orders the parties to file cross-motions for summary

7   judgment addressing whether there is a triable issue of fact as to trademark infringement

8   of the RESERVE Q marks.

9   **IV. CONCLUSION**

10          For the reasons stated above, the court GRANTS Reserve's Second Motion for

11   Partial Summary Judgment in part. Specifically, the court concludes: 1) EFI's RESERVE

12   IT, RESERVE IT 2.0, RESERVE GATEWAY, and RESERVE CLOUD are not protectable as

13   a matter of law; 2) there is no infringement of the RESERVE INTERACTIVE design mark

14   or the RESERVE ANYWHERE mark; and 3) there is no willful infringement of any of

15   EFI's marks. The court further orders the parties to file cross-motions for summary

16   judgment addressing whether there is a triable issue of fact as to trademark infringement

17   of the RESERVE Q marks. The parties' cross-motions shall be due on January 30, 3017.

18   Any oppositions thereto shall be filed by February 6, 2017. Any reply briefs shall be due

19   by February 13, 2017. The motions shall be set for hearing on February 27, 2017. The final

20   pretrial conference is hereby continued to March 13, 2017 and the trial date is hereby

21   continued to March 21, 2017.

22   **IT IS SO ORDERED.**

23

24   Dated: January 11, 2017

25

26   _____

27          DEAN D. PREGERSON
           UNITED STATES DISTRICT JUDGE

28